1  John M. Desmarais (CA SBN 320875)
   Gabrielle E. Higgins (CA SBN 163179)
2  **DESMARAIS LLP**
   101 California Street
3  San Francisco, CA 94111
   Telephone: 415-573-1900
4  Facsimile: 415-573-1901
   Email: jdesmarais@desmaraisllp.com
5  Email: ghiggins@desmaraisllp.com

6  Brian D. Matty (*pro hac vice forthcoming*)
   Jennifer M. Przybylski (*pro hac vice forthcoming*)
7  **DESMARAIS LLP**
   230 Park Avenue
8  New York, NY 10169
   Telephone: 212-351-3400
9  Facsimile: 212-351-3401
   Email: bmatty@desmaraisllp.com
10 Email: jprzybylski@desmaraisllp.com

11 *Counsel for Dr. Alicia Hager*

12                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
13

14  ALICIA HAGER, an Individual,              Case No. 3:23-mc-80261

15              Movant,                        **ALICIA HAGER'S MOTION TO**
                                              **QUASH DEPOSITION SUBPOENAS**
16          v.

17  ARIOSA DIAGNOSTICS, INC., ROCHE
    SEQUENCING SOLUTIONS, INC., ROCHE
18  MOLECULAR SYSTEMS, INC.,
    FOUNDATION MEDICINE, INC., BIORA
19  THERAPEUTICS, INC., MYRIAD
    GENETICS, INC. and
20  MYRIAD WOMEN'S HEALTH, INC.,

21              Respondents.

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on a date and time to be determined by the Court, Movant Alicia Hager ("Dr. Hager") will and hereby does move, pursuant to Federal Rule of Civil Procedure 45(d), for an order quashing the non-party deposition subpoenas served by Defendants Ariosa Diagnostics, Inc., Roche Sequencing Solutions, Inc., Roche Molecular Systems, Inc., and Foundation Medicine, Inc. (collectively "Ariosa"); Defendant Biora Therapeutics, Inc. ("Biora"); and Defendants Myriad Genetics, Inc. and Myriad Women's Health, Inc. (collectively "Myriad") (Ariosa, Biora, and Myriad collectively "Defendants") in connection with civil actions pending in the United States District Court for the District of Delaware *Ravgen, Inc. v. Ariosa Diagnostics Inc., et al.*, No. 20-cv-1646-RGA-JLH (D. Del.) ("*Ravgen v. Ariosa*"); *Ravgen, Inc. v. Myriad Genetics, Inc., et al.*, No. 20-cv-1730-RGA-JLH (D. Del.) ("*Ravgen v. Myriad*"); and *Ravgen, Inc. v. Biora Therapeutics, Inc.*, No. 20-cv-1734-RGA-JLH (D. Del.) ("*Ravgen v. Biora*") hereinafter referred to as the "Delaware litigations."

Dr. Hager moves to quash this Subpoena in the United States District Court for the Northern District of California pursuant to Fed. R. Civ. P. 45(d)(3) because the subpoenas demand Dr. Hager appear for deposition within this District. Pursuant to Civil Local Rule 37-1, counsel for Dr. Hager met and conferred with the Defendants on September 25, 2023. Defendants will not agree to withdraw their request for a live deposition of Dr. Hager.

Dr. Hager makes this motion based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Jennifer M. Przybylski in support thereof including the exhibits attached thereto, and any argument as may be presented at the hearing on the Motion.

**STATEMENT OF THE ISSUES**

1. Should the Court quash Defendants' subpoenas to non-party Dr. Hager for live deposition testimony under Federal Rule of Civil Procedure 45(d)(3)(A)?

**<u>TABLE OF CONTENTS</u>**

<u>Pages</u>

NOTICE OF MOTION ........................................................................................................ I

STATEMENT OF THE ISSUES ........................................................................................ I

I.   INTRODUCTION ....................................................................................................1

II.  FACTUAL BACKGROUND ...................................................................................2

    A.   Defendants' Inequitable Conduct Allegations Accuse Dr. Dhallan And Dr. Cronin, And Defendants Have Extensive Testimony From Those Witnesses. .......2

    B.   Dr. Hager Previously Testified In A Seven-Hour Deposition Entirely Focused On The Same Topic For Which Defendants Now Seek Another Deposition.........3

    C.   Defendants' Subpoenas To Dr. Hager In The Delaware Litigations Seek Testimony On The Same Topics About Which She Previously Testified..............5

    D.   Defendants Proposed Conducting The Deposition By Written Question But Withdrew That Compromise After Dr. Hager Agreed. ........................................5

III. LEGAL STANDARD ..............................................................................................6

IV.  ARGUMENT ...........................................................................................................7

    A.   A Deposition Of Dr. Hager Is Duplicative Of Dr. Hager's *Quest* Deposition. .......7

    B.   A Deposition Of Dr. Hager Is Not Warranted Because She Is Not Even Named In Defendants' Inequitable Conduct Pleadings. .......................................10

    C.   A Deposition Of Dr. Hager Is Unduly Burdensome In View Of The Alternative Methods Of Discovery Available. .......................................................13

V.   CONCLUSION ......................................................................................................14

CERTIFICATE OF SERVICE .........................................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Pages</u>

<u>Cases</u>

3

4

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406 (C.D. Cal. 2014) ..............................................................................11, 13

5

*Bales v. Quest USA Corp.*,
    No. 1:18-MC-00222-RM, 2019 WL 1454696 (D. Colo., Apr. 2, 2019) ..........................12

6

*Beinin v. Ctr. For Study of Popular Culture*,
    No. 06-cv-2298JW(RS), 2007 WL 832962 (N.D. Cal. Mar. 16, 2007) .................6, 10, 14

7

*Dart Indus. Co. v. Westwood Chem. Co.*,
    649 F.2d 646 (9th Cir. 1980) ........................................................................................14

8

9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)......................................................................................11

10

*Exxon Shipping Co. v. United States Department of Interior*,
    34 F.3d 774 (9th Cir.1994) ..............................................................................................6

11

12

*Games2U, Inc. v. Game Truck Licensing, LLC*,
    No. MC-13-00053-PHX-GMS, 2013 WL 4046655 (D. Ariz. Aug. 9, 2013)...................12

13

*Genus LifeSciences Inc. v. Lannett Co., Inc.*,
    No. 18-cv-07603-WHO, 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019)............................6

14

15

*In re Insogna*,
    No. 3:19-CV-1589-LAB-AHG, 2020 WL 85487 (S.D. Cal. Jan. 3, 2020) ......................12

16

*Petka v. Mylan Pharms., Inc.*,
    No. 16-MC-80196-MEJ, 2016 WL 6947589 (N.D. Cal. Nov. 28, 2016).........................12

17

18

*Price v. Peerson*,
    No. CV1303390PSGJEMX, 2014 WL 12687410 (C.D. Cal. Mar. 10, 2014)...................10

19

*Ravgen, Inc. v. Ariosa Diagnostics Inc., et al.*,
    No. 20-cv-1646-RGA-JLH (D. Del.) .......................................................................... i, 1

20

21

*Ravgen, Inc. v. Biora Therapeutics, Inc.*,
    No. 20-cv-1734-RGA-JLH (D. Del.) .......................................................................... i, 1

22

*Ravgen, Inc. v. Myriad Genetics, Inc., et al.*,
    No. 20-cv-1730-RGA-JLH (D. Del.) .......................................................................... i, 1

23

24

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
    No. 2:21-cv-09011-RGK (C.D. Cal. Oct. 7, 2022)............................................................3

25

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
    No. 6:20-cv-00972-ADA (W.D. Tex. Nov. 19, 2021).......................................................3

26

27

28

**Pages**

*ResQNet.com, Inc. v. Lansa, Inc.,*
    No. 01-cv-3578, 2004 WL 1627170 (S.D.N.Y. July 21, 2004)........................................12

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.,*
    276 F.R.D. 376 (D.D.C. 2011).........................................................................................12

*Therasense, Inc. v. Becton, Dickinson & Co.,*
    649 F.3d 1276 (Fed. Cir. 2011)........................................................................................11

**Rules**

FED. R. CIV. P. 26 (b)(2)(c)(i) ...................................................................................................6

FED. R. CIV. P. 45 (d)(1) ...........................................................................................................6

FED. R. CIV. P. 45 (d)(3)(A)(iii-iv) ...........................................................................................6

Fed. R. Civ. P. 45(d) ..................................................................................................................1

FED. R. CIV. P. 9........................................................................................................................11

1       Pursuant to Federal Rule of Civil Procedure 45(d), third-party subpoena recipient Dr. Alicia

2  Hager ("Dr. Hager"), by and through counsel, respectfully moves this Court to quash the deposition

3  subpoenas served by Defendants Ariosa Diagnostics, Inc., Roche Sequencing Solutions, Inc., Roche

4  Molecular Systems, Inc., and Foundation Medicine, Inc. (collectively "Ariosa") (subpoena attached

5  as Ex.[1] A); Defendant Biora Therapeutics, Inc. ("Biora") (subpoena attached as Ex. B); and Defendants

6  Myriad Genetics, Inc. and Myriad Women's Health, Inc. (collectively "Myriad") (subpoena attached

7  as Ex. C) (Ariosa, Biora, and Myriad collectively "Defendants").   The subpoenas demand both

8  document productions and deposition testimony in underlying litigation involving plaintiff Ravgen,

9  Inc. ("Ravgen").[2]  Dr. Hager respectfully requests that the subpoenas for a live deposition be quashed.[3]

## I.    INTRODUCTION

11       Dr. Hager is an attorney who has practiced law in various roles for more than twenty years.

12  Dr. Hager is currently the Chief Legal Officer of Nkarta, Inc., a company unaffiliated with any party

13  or issue in the underlying litigations here.  Dr. Hager's only tenuous connection to those litigations is

14  approximately two decades old—early in her career, Dr. Hager was an associate at the law firm

15  Morrison & Foerster LLP, the law firm that handled the prosecution of Ravgen's U.S. Patent Nos.

16  7,332,277 and 7,727,720 (the "Patents-in-Suit"), the two patents at issue in the underlying litigations

17  in the District of Delaware.  Dr. Hager left Morrison & Foerster more than fifteen years ago.  (Ex. F

18  at 38:3-23.)

19       Defendants subpoenaed Dr. Hager to testify about the prosecution of the Patents-in-Suit,

20  ostensibly in connection with their allegations of inequitable conduct, although ***none of the***

21  ***Defendants' lengthy pleadings for inequitable conduct even name Dr. Hager***.  And Dr. Hager was

22  already deposed for a full seven hours regarding the prosecution of the ***same patents*** in connection

---

[1] All Exhibits are attached to the Declaration of Jennifer M. Przybylski ("Przybylski Decl."), concurrently filed.
[2] The underlying litigations are *Ravgen, Inc. v. Ariosa Diagnostics Inc., et al.*, No. 20-cv-1646-RGA-JLH (D. Del.) ("*Ravgen v. Ariosa*"); *Ravgen, Inc. v. Myriad Genetics, Inc., et al.*, No. 20-cv-1730-RGA-JLH (D. Del.) ("*Ravgen v. Myriad*"); and *Ravgen, Inc. v. Biora Therapeutics, Inc.*, No. 20-cv-1734-RGA-JLH (D. Del.) ("*Ravgen v. Biora*") hereinafter referred to as the "Delaware litigations."
[3] This motion seeks only to quash the deposition aspect of the subpoenas.  Dr. Hager has already served objections and responses to the document requests in the subpoenas.

with **the same defense** of inequitable conduct in a prior case involving Ravgen, where Dr. Hager was questioned by **the same law firm** now seeking to re-depose Dr. Hager about the **same topic** in the Delaware litigations.  (*See* § II(A), *infra*.)  Defendants have not identified any new topics or issues to which they believe Dr. Hager's testimony might be relevant that were not already addressed at length in Dr. Hager's earlier seven-hour deposition.  (*See* § II(B), *infra*.)  Defendants also already have, or will take, an additional **76 hours of testimony** from the only two individuals actually named in Defendants' inequitable conduct pleadings: Dr. Ravinder Dhallan, the named inventor on the Patents-in-Suit, and Dr. Michael Cronin, former Ravgen employee and later outside counsel to Ravgen. (Przybylski Decl. ¶ 12.)  With all that testimony from the only individuals actually named in Defendants' lengthy inequitable conduct pleadings, and with all of Dr. Hager's testimony from her prior seven-hour deposition on the exact same topic, the fact that Defendants inequitable conduct pleadings **do not even name Dr. Hager** is telling.  Defendants and the parties in prior Ravgen cases have done everything they could to create inequitable conduct allegations and still have not come up with any reason to even plausibly plead (under the heightened standards required for pleading fraud to protect parties from baseless accusations) any allegations of inequitable conduct against Dr. Hager. The present subpoenas are a fishing expedition seeking to bring Dr. Hager within Defendants' already-expansive net of inequitable conduct allegations, and the Court should not allow such a tactic.

## II.    FACTUAL BACKGROUND

### A.    Defendants' Inequitable Conduct Allegations Accuse Dr. Dhallan And Dr. Cronin, And Defendants Have Extensive Testimony From Those Witnesses.

All Defendants in the Delaware litigation allege substantially similar inequitable conduct defenses.  Each alleges that "the named inventor" and "prosecution counsel" "made materially false or misleading statements to the USPTO" during prosecution of the Patents-in-Suit.  (Ex. G (Ariosa's First Amended Answer) at 27, 43 (stating bases for defenses); *also* Ex. H (Biora's First Amended Answer) at 40, 54 ("Persons substantively involved in prosecution . . . failed to disclose material information to the USPTO during prosecution[.]" (emphasis omitted)); Ex. I (Myriad's First Amended Answer) at 15 ("The inventor of the '277 and '720 patents, Dr. Ravinder Dhallan, and his in-house

patent prosecution counsel, Dr. Michael Cronin, withheld material, non-cumulative information from the USPTO[.]").  Each Defendant's pleading only names Dr. Dhallan and Dr. Cronin in the inequitable conduct allegations, alleging "Dr. Dhallan and Dr. Cronin failed to disclose" information during prosecution.  (Ex. G (Ariosa) at 41-42, 59); *also* Ex. H (Biora) at 40, 54-55 ("Among those actively participating substantively in prosecution . . . were named inventor Dr. Ravinder Dhallan and his in-house prosecution counsel, Dr. Michael Cronin."); Ex. I (Myriad) at 15 (referring to Dr. Ravinder Dhallan and Dr. Michael Cronin).  In sixty-four pages of allegations of inequitable conduct across three Answers, no Defendant named Dr. Hager nor her prior law firm, Morrison Foerster.  (Ex. G at 27-59; Ex. H at 39-52, 54-66; Ex. I at 15-18.)

The two individuals named—Dr. Dhallan and Dr. Cronin—testified for over ***forty-five hours*** in previous related cases involving the same patents asserted in the Delaware litigations.  (Przybylski Decl. ¶ 12.)  Defendants have all of the transcripts of Dr. Dhallan and Dr. Cronin's testimony because they requested them in the Delaware litigations, and Ravgen produced them.  (*Id*.)  In August 2023, over the span of a week, the Defendants in Delaware deposed Dr. Dhallan for another ***twenty-one hours*** in the Delaware litigations.  (*Id*.)  The Defendants will also depose Dr. Cronin for an additional ***ten hours*** in the Delaware litigations.  (*Id*.)  Defendants therefore will have more than ***seventy-six hours*** of testimony from the two individuals ***actually named*** in their inequitable conduct defenses.

**B.    Dr. Hager Previously Testified In A Seven-Hour Deposition Entirely Focused On The Same Topic For Which Defendants Now Seek Another Deposition.**

Ravgen previously filed a patent litigation suit against Quest Diagnostics Inc. ("Quest") in the Western District of Texas.  *Ravgen, Inc. v. Quest Diagnostics Inc.*, No. 6:20-cv-00972-ADA (W.D. Tex. Nov. 19, 2021).  The case was subsequently transferred to the Central District of California on November 15, 2021. *Ravgen, Inc. v. Quest Diagnostics Inc.*, No. 2:21-cv-09011-RGK (C.D. Cal. Oct. 7, 2022) ("*Ravgen v. Quest*").  On March 28, 2022, Quest's counsel at Wilmer Cutler Pickering Hale and Door LLP ("WilmerHale") subpoenaed Dr. Hager to testify regarding the prosecution of the Patents-in-Suit.  (Ex. E (Hager Quest Subpoena).)  On May 24, 2022, Dr. Hager sat for a deposition conducted by WilmerHale during which she testified for a total of seven hours and one minute on the

record.  (Ex. F (Hager Quest Deposition) at 301:6-7.)  The deposition was focused entirely on the prosecution of the Patents-in-Suit.  (*See generally* Exs. E and F.)  During the deposition, Dr. Hager repeatedly testified that she did not remember the prosecution of the '277 patent (referred to as "the '165 application") because it occurred so long ago:

> Q:  What was your role in drafting the '165 application?
>
> A:  I don't actually remember what my role was or whether I was involved in drafting of the patent application at all.  I did see when I checked the file history and checked the handful of documents in the file history, again, the kind of first thing I went to was did I file this case?  And if this is the earlier of the two patents in question, I had looked and saw that I had not signed the paperwork associated with the initial filing.  So that's -- typically would suggest that I didn't draft the patent application, but I don't have any memory of the process and whether I was involved in any way, shape or form or not.  I have no memory of it.

(Ex. F at 51:17-52:6; *also id*. at 56:10-12 ("I have no memory as to where those examples came from, or if I was even involved as I said in the drafting of the patent application."); 77:1-3 ("I don't really remember enough about the details of my practice over 15 years ago to say what I would have done.").)  Dr. Hager similarly testified that she did not remember the prosecution of the '720 patent (referred to as "the '812 application"):

> Q:  What was your role in drafting the '812 application?
>
> A:  I don't remember.  Because I don't remember anything about the drafting of either of these.  That being said, I see it is a -- it says it's a continuation.  If it was a continuation of the other application, then that means really nobody drafted the patent application, the patent application was already drafted, and would simply have been refiled as a continuation application.  So same as with the earlier filing, I don't know who – I don't know whether I had any involvement at all in the drafting of this patent application."

(*Id.* at 57:25-58:13; *also id.* at 59:4-6 ("I don't actually remember anything about drafting of either of these patent applications."); 60:9-11 ("Q:  Can you tell me who provided the examples in the specification from the '720?  A:  So in this case, I do not -- I [do] not remember."); 65:8-10 ("Q:  What were your responsibilities with respect to prosecution of the '277 and '720 patents?  A:  I do not remember."); 73:22-23 ("I don't remember prosecution of the Ravgen patents at all."); 80:1-5 ("I don't

recall prosecution of the Ravgen patents.  I don't remember to what degree I was involved or if I was involved.  I certainly don't remember any decisions made about what to disclose or not[.]").)  These are but a few examples of what Dr. Hager repeatedly testified over the course of seven hours of deposition:  Dr. Hager does not recall the prosecution of the Patents-in-Suit nor any specifics about test data contained in the patents.

### C. Defendants' Subpoenas To Dr. Hager In The Delaware Litigations Seek Testimony On The Same Topics About Which She Previously Testified.

On June 30, 2023, Defendant Ariosa—represented by WilmerHale, the same firm that represented Quest and conducted Dr. Hager's May 24, 2022 deposition—subpoenaed Dr. Hager, demanding another deposition.  (Ex. A.)  On July 21, 2023, Defendant Biora—also represented by WilmerHale—subpoenaed Dr. Hager, demanding another deposition.  (Ex. B.)  On August 4, 2023, Defendant Myriad—represented by the law firm Foley & Lardner LLP—subpoenaed Dr. Hager, demanding another deposition.  (Ex. C.)  All three subpoenas are at issue in this motion to quash.  All three subpoenas are substantively identical not only to each other, but also to Quest's prior subpoena to Dr. Hager.  (*Compare* Exs. A-C, E; *see also* § III(B), *infra*.)  Defendants have not stated a single topic for which Dr. Hager could provide testimony in an additional deposition that would be different from what she already provided at her deposition in *Ravgen v. Quest*.[4]

### D. Defendants Proposed Conducting The Deposition By Written Question But Withdrew That Compromise After Dr. Hager Agreed.

After Dr. Hager objected to Defendants' deposition subpoenas, Defendants' counsel acknowledged Dr. Hager's explanation that she "has no knowledge about events relating to prosecution of the patents-in-suit and issues of inequitable conduct beyond the content contained in the transcript of her deposition in the *Quest* action."  (Ex. D at 7.)  In view of that understanding, Defendants proposed a compromise in which Dr. Hager would answer twenty-six written questions for a deposition pursuant to FED. R. CIV. P. 31.  (*Id.*)  On September 6, 2023, Defendants provided

---

[4] Defendants have the transcript of Dr. Hager's *Quest* deposition because they requested the transcript in the Delaware litigations, and Ravgen produced it.  (Przybylski Decl. ¶ 12.).

1   those written questions. (*Id.* at 4; Ex. D-1.) On the same date, Defendants proposed certain restrictions

2   on the extent of Dr. Hager's responses (*e.g.*, to provide only "simple affirmative answers" or "simple

3   negative answers" to particular questions and that there would be no further questions by Ravgen or

4   Defendants other than those already submitted). (*Id.*) On September 14, 2023, counsel for Dr. Hager

5   responded that she would agree to the deposition by written questions as long as she was permitted to

6   provide only truthful answers—not just "yes" or "no" responses as designated by Defendants—"for

7   details she may not recall." (*Id.* at 3.) Defendants clarified that they would accept responses that Dr.

8   Hager "does not remember" or "does not recognize" certain documents as responses to the deposition

9   by written question. (*Id.* at 2-3.) Counsel for Dr. Hager confirmed that, acknowledging "Dr. Hager's

10  ability to answer she does not recall for details she does not remember," Dr. Hager agreed to

11  Defendants' proposal of a deposition by written question in lieu of a live deposition. (*Id.* at 2.) But

12  on September 18, 2023, Defendants reversed course, stating they "no longer believe that deposition

13  by written question of Dr. Hager is a workable solution." (*Id.* at 1.)

14  **III.    LEGAL STANDARD**

15         "The Federal Rules of Civil Procedure . . . 'afford nonparties special protection against the

16  time and expense of complying with subpoenas.'" *Beinin v. Ctr. For Study of Popular Culture*, 2007

17  WL 832962, at *2 (N.D. Cal. Mar. 16, 2007) (quoting *Exxon Shipping Co. v. United States Department*

18  *of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)). Rule 45 mandates that the Court "must quash or modify

19  a subpoena . . . that requires disclosure of privileged or other protected matter, if no exception or

20  waiver applies; or . . . subjects a person to undue burden." FED. R. CIV. P. 45 (d)(3)(A)(iii-iv). "A

21  party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid

22  imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45 (d)(1).

23  "The court must limit discovery if it determines that 'the discovery sought is unreasonably cumulative

24  or duplicative, or can be obtained from some other source that is more convenient, less burdensome,

25  or less expensive.'" *Genus LifeSciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, at *3 (N.D. Cal.

26  Dec. 30, 2019) (quoting FED. R. CIV. P. 26 (b)(2)(c)(i)).

27

28

**IV.    ARGUMENT**

Dr. Hager moves to quash Defendants' subpoenas (Exs. A-C) to the extent they demand a live deposition.  The subpoenas should be quashed for three reasons.  ***First***, Dr. Hager already testified for more than seven hours at deposition on the same subject matter sought by Defendants' subpoenas, and any further deposition would be unreasonably duplicative of that testimony.  ***Second***, a deposition of Dr. Hager is not warranted because neither she nor her former law firm are even named in the more than 60 pages of inequitable conduct allegations made by Defendants.  ***Third***, a deposition of Dr. Hager is unduly burdensome given the availability of other sources of discovery for the same subject matter, including seven hours of prior testimony by Dr. Hager and more than 75 hours of testimony by Drs. Dhallan and Cronin.  And to the extent the Court decides any further testimony from Dr. Hager is warranted, Dr. Hager remains willing to provide testimony by written deposition based on the questions and procedures agreed to on September 14, 2023.

**A.    A Deposition Of Dr. Hager Is Duplicative Of Dr. Hager's *Quest* Deposition.**

The discovery Defendants seek from Dr. Hager was already provided during her *Quest* deposition, conducted by certain Defendants' counsel.  Indeed, the Delaware subpoenas at issue in this motion were copied nearly verbatim from the prior *Quest* subpoena, in response to which Dr. Hager sat for a full seven-hour deposition.  Although the present Delaware subpoenas do not include deposition topics, the *Quest* subpoena and all three Delaware subpoenas included document requests.  The Delaware subpoenas served by the Defendants all include identical requests to Dr. Hager.  (*See generally* Exs. A-C.)  And the requests in the three Delaware subpoenas are ***nearly verbatim copies*** of the requests in the prior subpoena issued in *Quest*.  (*Compare* Exs. A-C with Ex. E.)  The only two differences across the subpoenas are:  (1) the Ariosa, Biora, and Myriad subpoenas contain an additional request to produce "All Documents You produced in any other litigation involving the Asserted Patents or Related Patents, including but not limited to the Related Actions" (i.e., anything that was produced in response to the *Quest* subpoena)  (Ex. A at 9; Ex. B at 9; Ex. C at 8); and (2) certain requests include the following additions (shown underlined):

| *Quest* Subpoena (Ex. E) | Ariosa Subpoena (Ex. A) | Biora Subpoena (Ex. B) | Myriad Subpoena (Ex. C) |
|---|---|---|---|
| "including but not limited to the test results cited in Example 4 and Table XXI." (requests 1(n), 2, 16(n), 17) | "including but not limited to the test results cited in Example 4, **Table V, Example 15**, and Table XXI." (requests 2(n), 3, 17(n), 18) | *Same as Ariosa* | *Same as Ariosa* |
| "including but not limited to testing that produced results different from Example 4 and Table XXI." (requests 1(o), 16(o)) | "including but not limited to testing that produced results different from Example 4, **Table V, Example 15**, and Table XXI." (requests 2(o), 17(o)) | *Same as Ariosa* | *Same as Ariosa* |

(*Compare* Exs. A-C with Ex. E.)  With the exception of these two minor additions, the remainder of the **forty-seven** requests in each Delaware subpoena are identical to those propounded in *Quest*.

As explained in Section II.D above, Defendants proposed a compromise to take Dr. Hager's deposition by written questions pursuant to FED. R. CIV. P. 31, in lieu of seeking a live deposition. (Ex. D (e-mail correspondence); Ex. D-1 (proposed questions).)   The proposed questions—presumably the most important discovery in Defendants' view—related to:

1.   Confirmation of Dr. Hager's employment (Question 1);

2.   Confirmation of Dr. Hager's testimony in her May 24, 2022 *Quest* deposition (Question 2);

3.   Whether Dr. Hager received testing results or materials related to certain examples and tables in the Patents-in-Suit (Questions 3-14);

4.   Whether Dr. Hager was shown particular documents in her role as Ravgen's prosecution counsel (Questions 15-22);

5.   Whether Dr. Hager reviewed data or documentation related to specific exhibits from the *Quest* deposition (Questions 23-24); and

6.   Dr. Hager's preparation and responses to the deposition by written questions (Questions 25-26).

(Ex. D-1.)  Every question presented repeats topics that were addressed during Dr. Hager's *Quest* deposition.

During the *Quest* deposition, Dr. Hager was repeatedly asked about the prosecution of two patents filed approximately **two decades** ago while Dr. Hager was an associate at Morrison & Foerster LLP.  In response, Dr. Hager stated that she "do[es]n't remember anything about the drafting of either"

1  of the applications giving rise to the Patents-in-Suit.  (Ex. F at 57:25-58:13; *also id.* at 51:3-19.)

2  Despite her lack of recollection, the deposition continued for seven hours, during which Dr. Hager

3  was presented numerous documents related to her former law firm's prosecution of the Patents-in-

4  Suit.  (*See generally id.*)  Despite the length of time and the limits of Dr. Hager's role[5] in the

5  prosecution of the Patents-in-Suit, Dr. Hager endured the lengthy seven-hour deposition and provided

6  what information she could recall.

7           Dr. Hager was shown and explicitly asked about example experiments and data tables in the

8  Patents-in-Suit in her *Quest* deposition—a subset of which are the only "new" subject matter that

9  Defendants included in their subpoenas here.  Dr. Hager explained she has no memory regarding those

10  examples in the specification or where they came from:

11           Q:  [W]ith respect to the examples that are provided in the specification,
             and we have here the '277 patent and it has some examples in it, where
12           did those come from?  Did they come from [Morrison & Foerster LLP]
             or did they come from the client?
13
             A:  I have no memory as to where those examples came from, or if I
14           was even involved as I said in the drafting of the patent application.

15  (Ex. F at 56:2-12; *also id.* 60:9-11 ("Q:  Can you tell me who provided the examples in the specification

16  from the '720?  A:  So in this case, I do not -- I [do] not remember.").)  And despite testifying she did

17  not recall the details or source of the examples, Dr. Hager was asked explicitly at her *Quest* deposition

18  about the same examples and tables that Defendants apparently seek to re-depose her about now:

19           Q:  You identify in this first paragraph Examples 4 and 15 and Table
             XXI.  Do you see that?
20
             A:  I reference Example 4 and Example 15, and oh, Table XXI, yeah I
21           see that.

22  (Ex. F at 163:4-7; *also id.* at 161:17-164:21 (generally asking Dr. Hager to review a document); 194:2-

23  7 ("Q:  That data that's reported here in Table XXI, that's data that came from Dr. Dhallan and Ravgen,

24  right?  A:  I don't recall anything about the preparation or prosecution of this case, so I can't say.").)

25

26  [5] Dr. Hager was an associate at Morrison & Foerster at the time of the prosecution of the Patents-in-
    Suit and, as explained, did not recall her specific role in the prosecution.  A different attorney, Gladys
27  Monroy, was the partner at Morrison & Foerster who "would have been ultimately the one overseeing
    the patent prosecution work by the law firm[.]"  (Ex. F at 49:1-13.)

28

**ALICIA HAGER'S MOTION TO QUASH**                9                Case No. 3:23-mc-80261
**DEPOSITION SUBPOENAS**

Dr. Hager already testified at length about the prosecution of the Patents-in-Suit.  She answered hours of questions despite repeatedly explaining she does not recollect the facts surrounding the prosecution of the two Patents-in-Suit that occurred decades ago.  Dr. Hager answered hours of questions regarding different documents, example experiments, and test data, all of which she repeatedly indicated she did not recognize or recall.  The proposed questions for a deposition by written questions here show that Defendants only seek testimony related to those same topics already addressed in Dr. Hager's *Quest* deposition.

On balance, "the relevance of the discovery sought, [Defendants'] need, and the potential hardship" to Dr. Hager cannot justify the duplicative discovery Defendants are seeking.  *Beinin*, 2007 WL 832962, at *2 (denying motions to compel discovery from non-parties where relevance did not outweigh the need nor hardship).  Any additional deposition of Dr. Hager is unnecessarily burdensome, as she has already stated under oath—repeatedly—that she has no recollection of the topics at hand.  (*See, e.g.*, Ex. F at 51:17-52:6; 56:10-12; 57:25-58:13; 59:4-6; 60:9-11; 65:8-10; 73:22-23; 77:1-3; 194:2-7.)  The Court should quash the subpoenas to avoid subjecting Dr. Hager to unreasonably duplicative questions when she has already testified that she does not recall the information sought.  *See Price v. Peerson*, 2014 WL 12687410, at *2 (C.D. Cal. Mar. 10, 2014) (quashing subpoena where the deponent "stated under oath he is not aware" of the materials subject to the subpoena where plaintiff could seek the same information through other means); *also Beinin*, 2007 WL 832962, at *5 (denying motion to compel, finding where subpoenaed party "has no recollection" whether certain material existed, "the probative value" of the requested discovery "is minimal at best").

### B.    A Deposition Of Dr. Hager Is Not Warranted Because She Is Not Even Named In Defendants' Inequitable Conduct Pleadings.

Defendants' subpoenas relate only to the prosecution of the Patents-in-Suit in connection with their allegations of an inequitable conduct defense.  However, ***no inequitable conduct pleading refers to either Dr. Hager or her former law firm Morrison Foerster***.  (*See* Section II(A), *supra*.)  A second deposition of Dr. Hager is not warranted because Defendants have not even pled inequitable conduct

1  against Dr. Hager under the heightened FED. R. CIV. P. 9 pleading standard that governs such

2  pleadings.   In order to state a claim for inequitable conduct, Defendants "must include sufficient

3  allegations of underlying facts from which a court may reasonably infer that a ***specific individual*** (1)

4  knew of the withheld material information or of the falsity of the material misrepresentation, and (2)

5  withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp.*

6  *v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009) (emphasis added).   Defendants have

7  not made any allegations related to Dr. Hager; they name only Dr. Dhallan and Dr. Cronin, who have

8  ***already testified at length in the underlying disputes***.   Any discovery related to Defendants' claims

9  is equally available through the depositions of Dr. Dhallan and Dr. Cronin without burdening a non-

10 party with yet another deposition. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300

11 F.R.D. 406, 410 (C.D. Cal. 2014) ("[A] court may prohibit a party from obtaining discovery from a

12 non-party if that same information is available from another party to the litigation.") (quotations and

13 citations omitted).

14     The   Federal   Rules   of   Civil   Procedure   and   precedent   provide   heightened   pleadings

15 requirements for a proper pleading of inequitable conduct to protect counsel from exactly the type of

16 fishing expedition Defendants here seek to embark on in a second deposition of Dr. Hager. *Exergen,*

17 575 F.3d at 1326 ("'[I]nequitable conduct, while a broader concept than fraud, must be pled with

18 particularity'" under Rule 9(b)").   That standard requires identifying the "specific individual" who is

19 the subject of the inequitable conduct allegations, with supporting facts. *Id.* at 1328-29; *see also*

20 *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (holding that to

21 find inequitable conduct, intent to deceive must be the "single most reasonable inference able to be

22 drawn from the evidence," and that "when there are multiple reasonable inferences that may be drawn,

23 intent to deceive cannot be found.").   There is no such pleading against Dr. Hager in any of the

24 underlying disputes here.

25     In patent cases, concerns regarding fishing expeditions against prosecution counsel have driven

26 the repeated quashing of subpoenas to patent prosecution counsel, like the subpoenas at issue here,

27 without a properly pled inequitable conduct defense. *See Sterne Kessler Goldstein & Fox, PLLC v.*

28

*Eastman Kodak Co.*, 276 F.R.D. 376, 383-86 (D.D.C. 2011) (quashing subpoena to depose counsel as "exactly the type of fishing expedition that courts have attempted to prevent when seeking to deter deposition of counsel" when plaintiff had not plead inequitable conduct and "Kodak has already deposed the inventor of the patent, who can speak directly" on the patent prosecution topic); *Games2U, Inc. v. Game Truck Licensing, LLC*, No. MC-13-00053-PHX-GMS, 2013 WL 4046655, at *8-9 (D. Ariz. Aug. 9, 2013) (quashing subpoena of non-party prosecution counsel where inequitable conduct not pled); *Bales v. Quest USA Corp.*, No. 1:18-MC-00222-RM, 2019 WL 1454696, at *1 (D. Colo., Apr. 2, 2019) (same); *Petka v. Mylan Pharms., Inc.*, No. 16-MC-80196-MEJ, 2016 WL 6947589, at *4 (N.D. Cal. Nov. 28, 2016) (same); *In re Insogna,* No. 3:19-CV-1589-LAB-AHG, 2020 WL 85487, at *11 (S.D. Cal. Jan. 3, 2020) (same); *ResQNet.com, Inc. v. Lansa, Inc.,* No. 01-cv-3578, 2004 WL 1627170, at *4-5 (S.D.N.Y. July 21, 2004) (same).  In sixty-four pages of allegations of inequitable conduct across three Answers, no Defendant named Dr. Hager nor her prior law firm, Morrison Foerster.  (Ex. G (Ariosa) at 27-59; Ex. H (Biora) at 39-52, 54-66; Ex. I (Myriad) at 15-18.)  In the absence of any properly pled allegations of inequitable conduct by Dr. Hager, a deposition is not warranted and should be quashed.

Moreover, extensive discovery related to the inequitable conduct ***actually pled*** by Defendants is already available through less burdensome means.  The two individuals named in Defendants' pleadings—Dr. Dhallan and Dr. Cronin—have already testified at length, and Defendants will have more than ***seventy-six hours*** of testimony from them.  (*See* Section II(A); Przybylski Decl. ¶ 12.) Defendants have access to the entirety of this discovery, had or will have the opportunity to explore additional testimony from these individuals, and the discovery is more directly related to the specific allegations pled without unduly burdening a non-party.  Given the availability of other avenues of discovery on top of the minimal relevance of Dr. Hager's testimony to a defense that includes ***no allegations*** related to her conduct, Defendants' subpoenas to Dr. Hager should be quashed.

**C.**     **A Deposition Of Dr. Hager Is Unduly Burdensome In View Of The Alternative Methods Of Discovery Available.**

Dr. Hager remains willing to respond by written deposition to the questions presented by Defendants (Ex. D-1) and under the terms already negotiated and agreed upon with Defendants, to the extent the Court determines any additional testimony is warranted. (*See generally* Ex. D.)  Dr. Hager is a non-party to this dispute.  As chief legal officer, she is key personnel at Nkarta, a company with no connection to this litigation.  She has already provided hours of testimony—taken by the same law firm representing two Delaware Defendants—that clearly indicates she does not have any recollection of the topics identified in Defendants' subpoenas.  The Court should limit the discovery sought to that which reduces the burden on Dr. Hager—a non-party—particularly given the availability of alternative sources of the same information.  *See Amini* , 300 F.R.D. at 411 (quashing subpoena where "the value of [the subpoenaed] testimony . . . appears to be low or at best unknown and the information that [the subpoenaing party] seeks is obtainable" through other means).

Defendants have numerous other means available to them.  First, Dr. Hager remains willing to provide her testimony via written questions to the extent any relevant, non-duplicative discovery is identified by Defendants—a reasonable accommodation given she has already sat through seven hours of live deposition on a topic she repeatedly stated she does not remember.  Dr. Hager originally informed Defendants of her intent to seek to quash the subpoenas outright.  Instead, in an effort to compromise and minimize the need to seek assistance from the Court, she agreed to provide responses to the set of questions proposed by Defendants.  She and Ravgen agreed not to object to any questions, not to ask any additional or different questions, or ask that Defendants change any of the questions they were proposing.  (*See* Ex. D.)  The only request Dr. Hager made was to be permitted to respond to the questions truthfully, without limiting her responses to the scripted "yes" or "no" responses originally proposed by Defendants.  (*See* Ex. D at 1-3.)  In particular, Dr. Hager requested to clarify that she would answer she does not recall (rather than a strict "yes" or "no") for details she does not remember—which her prior deposition suggests could be many.  Despite initially reaching an agreement, Defendants' renewed insistence that Dr. Hager sit for a live deposition suggests that they

1  only intend to harass her for her inability to remember whether she received certain documents decades

2  ago—just as she already endured for seven hours in the *Quest* deposition.  The burden of an additional

3  deposition here is not warranted against a non-party who has attempted to reach a reasonable,

4  minimally burdensome compromise that would still provide Defendants truthful testimony to the

5  questions they seek to pose.  *Beinin*, 2007 WL 832962 at *2 ("When applied to third parties, discovery

6  can be limited to protect them from harassment, inconvenience, or disclosure of confidential

7  documents.") (citing *Dart Indus. Co. v. Westwood Chem. Co*., 649 F.2d 646, 649 (9th Cir. 1980)).

8       Additionally, as discussed above, Defendants have already subpoenaed others in this case who

9  can testify to the same subject matter in lieu of or in addition to a deposition by written questions.  The

10  purpose of Dr. Hager's subpoena relates to Defendants' claims of inequitable conduct.  Yet Defendants

11  have made ***no allegations of inequitable conduct by Dr. Hager***.  The depositions of Dr. Dhallan and

12  Dr. Cronin provide a substantially less burdensome—and indeed, more relevant—source of seeking

13  the same discovery without necessitating another deposition of a non-party.

14       A second live deposition is unduly burdensome and will not provide any discovery from Dr.

15  Hager that is not already available through reference to her *Quest* subpoena, Dr. Hager's responses to

16  a deposition by written questions, or the hours and hours of depositions from Dr. Dhallan and Dr.

17  Cronin.  Dr. Hager remains willing to reasonably accommodate Defendants; she merely seeks to have

18  Defendants obtain the discovery in a non-duplicative and minimally burdensome manner.

19  **V.    CONCLUSION**

20       For the foregoing reasons, Dr. Hager respectfully requests the Court quash Defendants'

21  subpoenas for live deposition testimony.

Dated: October 6, 2023

*/s/ Gabrielle E. Higgins*
John M. Desmarais (CA SBN 320875)
Gabrielle E. Higgins (CA SBN 163179)
**DESMARAIS LLP**
101 California Street, Suite 3070
San Francisco, CA 94111
Telephone: 415-573-1900
Facsimile: 415-573-1901
Email: jdesmarais@desmaraisllp.com
Email: ghiggins@desmaraisllp.com

Brian D. Matty (*pro hac vice forthcoming*)
Jennifer M. Przybylski (*pro hac vice forthcoming*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
Email: bmatty@desmaraisllp.com
Email: jprzybylski@desmaraisllp.com

*Counsel for Dr. Alicia Hager*

1

## CERTIFICATE OF SERVICE

2      I hereby certify that this document and all associated papers were served on October 6, 2023,

3  via email to all counsel of record in the underlying Delaware Litigation as identified below.

4   Dated: October 6, 2023           _/s/ Jennifer M. Przybylski_
                                Jennifer M. Przybylski

5

| **Counsel for Defendant Arisoa:** | **Counsel for Defendant Biora:** | **Counsel for Defendant Myriad:** |
|---|---|---|
| Robert J. Gunther, Jr. | Michael J. Summersgill | Liane M. Peterson |
| robert.gunther@wilmerhale.com | michael.summersgill@wilmerhale.com | lpeterson@foley.com |
| Christopher R. Noyes | Harry Hanson | Bradley Roush |
| christopher.noyes@wilmerhale.com | harry.hanson@wilmerhale.com | broush@foley.com |
| Omar A. Khan | WILMER CUTLER PICKERING | FOLEY & LARDNER LLP |
| omar.khan@wilmerhale.com | HALE AND DORR LLP | Washington Harbour |
| Scott G. Greene | 60 State Street | 3000 K Street, N.W., Suite 600 |
| scott.greene@wilmerhale.com | Boston, MA 02109 | Washington, D.C. 20007 |
| Paul Samuel Callaghan | (617) 526-6000 | (202) 672-5300 |
| Sam.Callaghan@wilmerhale.com | | |
| WILMER CUTLER PICKERING | Amanda L. Major | Tiffany K. Sung |
| HALE AND DORR LLP | amanda.major@wilmerhale.com | tsung@foley.com |
| 7 World Trade Center | WILMER CUTLER PICKERING | FOLEY & LARDNER LLP |
| 250 Greenwich Street | HALE AND DORR LLP | 555 South Flower Street, Suite |
| New York, NY 10007 | 2100 Pennsylvania Ave. NW | 3300 |
| Tel: (212) 230-8800 | Washington, DC 20037 | Los Angeles, CA 90071-2418 |
| Fax: (212) 230-8888 | (202) 663-6000 | (212) 972-4500 |
| | | |
| Timothy A. Cook | Alix Pisani | Thomas James |
| tim.cook@wilmerhale.com | alix.pisani@wilmerhale.com | tajames@foley.com |
| WILMER CUTLER PICKERING | WILMER CUTLER PICKERING | FOLEY & LARDNER LLP |
| HALE AND DORR LLP | HALE AND DORR LLP | 321 North Clark Street, Suite |
| 60 State Street | 350 South Grand Avenue | 3000 |
| Boston, MA 02109 | Suite 2400 | Chicago, IL 60654 |
| Tel: (617) 526-6000 | Los Angeles, California 90071 | (312) 832-4500 |
| Fax: (617) 526-5000 | (213) 443-5444 | |
| | | John G. Flaim |
| | | john.flaim@bakermckenzie.com |
| | | Heiko Burow |
| | | heiko.burow@bakermckenzie.com |
| | | Nicholas O. Kennedy |
| | | nicholas.kennedy@bakermckenzie.com |
| | | BAKER &McKENZIE LLP |
| | | 1900 North Pearl Street, Suite |
| | | 1500 |
| | | Dallas, TX 75201 |
| | | (214) 978-3000 |